[Crim. No. 8724. In Bank. June 28, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LEE HOLFORD, Defendants and Appellant.

---

Levy, DeRoy, Geffner, Koszdin & Glow and Richard J. Cantrell for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—In reversing defendant's conviction for violation of section 20001 of the Vehicle Code, which condemns as a felony the failure of a driver of a vehicle in an accident resulting in an injury to another person to stop, render aid and leave his identification,[1] we discuss three issues. First, we hold that the admission of defendant's incriminating statements constituted a violation of his right to counsel under *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and prejudiced the defendant to the extent that we must reverse the conviction. Second, we point out that even if we regard one of the witnesses as an accomplice in the crime, the record demonstrates sufficient corroboration of his testimony to sustain a conviction. Third, we explain why the court on retrial should give an instruction more clearly delineating the requirement that defendant harbor knowledge that an injury resulted from the accident.

On November 25, 1963, at about 4:30 p.m., as Frank Rink drove his automobile in the center lane of Rosecrans Boulevard in Los Angeles, a light blue Dodge automobile, proceeding in the same direction, suddenly moved from the right lane into the center lane, striking his car. The impact threw Rink against the passenger side of his vehicle; his car crossed over the double line and collided head-on with a pickup truck. Rink suffered serious injury.

The Dodge, occupied by a male driver and two other men, continued down Rosecrans Boulevard without stopping and turned onto Paramount Boulevard. Two witnesses observed the license number of the Dodge and reported it to the police.

Later that evening the police arrested defendant. Defendant owned a Dodge automobile which bore the reported license number[2] and exhibited paint marks on the bumper. The police

---

[1] "The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004, and any person failing to stop or to comply with the requirements under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars ($5,000) or by both."

[2] An officer testified that an employee of the Department of Motor Vehicles informed him that defendant's automobile displayed the reported

took defendant to the police station and there questioned him. During his first interrogation defendant denied that he was at any time on Rosecrans Boulevard. But, according to the testimony of an examining officer, defendant, during a second interrogation on the same evening, stated that after leaving a bar with two companions he drove down Rosecrans Boulevard. Defendant further explained that as he changed lanes he felt a minor jar of his vehicle and heard a slight scraping noise but did not see what had happened. According to the officer, defendant said that after this event, one of the passengers, a Floyd Hathcock, informed him that the automobile which his car had hit had thereafter gone out of control and smashed into another automobile. Defendant further stated that while he began to pull his car over to the side of the road in order to stop, Hathcock and a third occupant, Richard Carlton, encouraged him to leave the scene of the accident. The officer also testified that defendant declared that he left the scene primarily because he had been drinking and felt that he would be fastened with responsibility for the accident.

At the trial defendant testified that after he felt that his car had bumped another vehicle he suggested to his passengers that an accident might have taken place and that they return to the scene of the impact. Hathcock advised, however, that he did not think there had been an accident, although he saw the automobile that they had sideswiped "swerve a little." According to defendant, both passengers urged him not to stop, saying that if an accident had occurred, the fact that they had been drinking, even in the absence of fault, would "get . . . [them] in trouble." Defendant denied that he had told police that he knew of the collision.

Hathcock's testimony consisted of assertions that he felt defendant's car hit another vehicle and that he saw the pickup truck swerve but did not see a collision. He stated that defendant suggested that they stop because of the possibility of an accident in which someone may have been injured; Hathcock, however, told defendant not to do so because they had been drinking and thus might be held liable.

An independent witness testified that he heard an audible noise when the two automobiles came into contact with each other and a loud noise when the automobile collided with the pickup truck.

---

license number. The trial judge improperly admitted this hearsay evidence over defendant's objection. (See *Horne* v. *United States* (5th Cir. 1957) 246 F.2d 83, 85.)

The trial judge, in the presence of the jury, conducted a *voir dire* examination for the purpose of reaching a determination as to the voluntariness of defendant's statements. The record does not indicate whether, in accordance with constitutional requirements (*Jackson* v. *Denno* (1964) 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908]), the trial court preliminarily found that defendant voluntarily made the incriminating statements. We need not probe this issue, however, since we conclude that the statements should have been excluded upon another ground.

The record does not disclose that prior to rendering the statements defendant was ever advised of his rights to counsel and to remain silent or that he had otherwise waived those rights. When, at the police station, defendant gave his statements, the police had already arrested him and had engaged him for the second time in a series of interrogations. A police officer had told defendant that statements of various witnesses indicated that he had committed the crime. Since, under such circumstances the process of interrogation lent itself to eliciting incriminating statements, and since defendant was under arrest, the accusatory stage, or that stage at which a suspect is entitled to counsel, had matured. (*People* v. *Stewart* (1965) 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97].) In the absence of any indication that prior to the interrogations defendant had been advised of his rights to counsel and to remain silent or that he had otherwise waived those rights, those statements were erroneously admitted. (*People* v. *Dorado, supra,* 62 Cal.2d 338; *People* v. *Stewart, supra,* at p. 580.)

 Since defendant's statements did not constitute a confession or an admission tantamount to a confession, however, we must consider whether this erroneous introduction constituted such prejudice to defendant as to require reversal under article VI, section 4½ of the California Constitution (see *People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243]). We point out why we have concluded that the erroneous admission of defendant's statements resulted in such prejudice.

 Section 20001 of the Vehicle Code penalizes the driver who fails to stop the vehicle which is "involved in an accident resulting in injury"; previous cases have said that knowledge of injury is an essential element of the crime proscribed by that section (e.g., *People* v. *Mayo* (1961) 194 Cal.App.2d 527, 534 [15 Cal.Rptr. 366]; *People* v. *Blankenship* (1959) 171

Cal.App.2d 173, 177 [340 P.2d 34]; *People* v. *Kuhn* (1956) 139 Cal.App.2d 109, 112 [292 P.2d 964]; *People* v. *Rallo* (1931) 119 Cal.App. 393, 398 et seq. [6 P.2d 516]; see *Garabedian* v. *Superior Court* (1963) 59 Cal.2d 124 [28 Cal.Rptr. 318, 378 P.2d 590]). Usually, however, such knowledge must be derived from the surrounding facts and circumstances of the accident. (E.g., *People* v. *Kuhn, supra,* at p. 112.) Yet the driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge. Hence a requirement of actual knowledge of injury would realistically render the statute useless. ▋ We therefore believe that criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.[3]

▋ In the instant case defendant's incriminating statement forged an important link in the chain of culpability. Defendant stated that he had been told by Hathcock that the car he had struck had thereafter crashed head-on into another vehicle. Defendant's acknowledgement that Hathcock informed him of the facts of the accident contributed a vital element in establishing that defendant knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury. The impact of the statement becomes even more important in view of the fact that at the trial Hathcock testified that he did not see any car strike the pickup truck.

Having concluded that the admission of defendant's incriminating statement worked prejudicial error, we need not consider defendant's additional asserted reason for its exclusion upon the ground that the prosecution did not sufficiently establish the corpus delicti.

We turn to an explanation of our reasons for rejecting defendant's second contention that the conviction cannot stand because it rests upon the uncorroborated testimony of Hathcock, an asserted accomplice. Although we have concluded that Hathcock acted as an accomplice, we find sufficient evi-

---

[3]Neither knowledge of injury nor knowledge of the seriousness of the nature of the accident is required for a conviction under Vehicle Code section 20002, which provides that a driver of a vehicle in an accident resulting in damage to property commits a misdemeanor if he fails to stop and give the required information.

dence in the record to corroborate his testimony and to tie defendant into the crime.

A determinative test is framed by section 1111 of the Penal Code: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

■ If Hathcock, knowing of the nature of the accident, advised and encouraged the defendant to leave the scene, Hathcock would then be a principal in the commission of the crime, for Penal Code section 31 provides that those "concerned in the commission of a crime" constitute principals "whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission. . . ." ■ The person who advises and encourages the commission of the crime while present at its perpetration surely falls within the definition of a principal. (1 Witkin, Cal. Crimes (1963) 45; Fricke, Cal. Crim. Law (8th ed. 1961) 86, 91; see *People* v. *Fleming* (1961) 191 Cal.App.2d 163, 168 [12 Cal.Rptr. 530]; *People* v. *Lewis* (1952) 113 Cal.App.2d 468 [248 P.2d 461].) ■ Thus Hathcock, who admittedly encouraged the defendant to leave the scene of the accident and who must have acquired the same knowledge concerning the nature of the accident as did defendant, would be a principal. As such he would be liable to prosecution for the identical offense charged against defendant and therefore would be an accomplice. (1 Witkin, Cal. Crimes, *supra*; Fricke, Cal. Crim. Law, *supra*.)

The cases which hold that persons other than the driver may be found guilty of the offense of hit-and-run do not require that those persons control or possess the right to exercise control over the automobile. ■ If such a person does control or possess the right to exercise control of the vehicle, he may under some circumstances be guilty of the crime if he does not cause the car to be stopped. (See *People* v. *Green* (1950) 96 Cal.App.2d 283 [215 P.2d 127]; *People* v. *Odom* (1937) 19 Cal.App.2d 641 [66 P.2d 206]; *People* v. *Rallo* (1931) 119 Cal.App. 393, 397 [6 P.2d 516]; *People* v. *Steele* (1929) 100 Cal.App. 639 [280 P. 999]; *People* v. *Maggio*

(1928) 90 Cal.App. 683 [266 P. 813].)[4] But a passenger who advises and encourages the driver to leave the scene of the accident, knowing that someone has been injured, is also guilty of the offense. (*People* v. *Graves* (1925) 74 Cal.App. 415 [240 P. 1019] ; see *People* v. *Green, supra,* 96 Cal.App.2d 283, 290; 62 A.L.R.2d (1958) 1130.)

▮ Thus, in instructing the jury that the testimony of an accomplice must be corroborated, the trial judge properly included the statement that "If the crime of violation of CVC § 20001, the commission of which is alleged in the information, was committed by anyone, then, under the evidence in this case and as a matter of law, the witness Floyd Hathcock was an accomplice." (CALJIC No. 826 (old form).)

▮ Although Hathcock must, then, be considered to have been an accomplice, sufficient evidence corroborated his testimony. ▮ ▮ The evidence required for corroboration of an accomplice "need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged." (*People* v. *Lyons* (1958) 50 Cal.2d 245, 257 [324 P.2d 556] ; see Witkin, Cal. Evidence (1958) 544-545 and cases cited therein.) ▮ Moreover, evidence of corroboration is sufficient if it connects defendant with the crime, although such evidence "is slight and entitled, when standing by itself, to but little consideration." (*People* v. *McLean* (1890) 84 Cal. 480, 482 [24 P. 32] ; *People* v. *Kempley* (1928) 205 Cal. 441, 456 [271 P. 478].)

▮ Excluding defendant's erroneously admitted statements, the record discloses that defendant's car struck another car and that as a result the struck car collided with a third vehicle. Defendant testified that he felt his car bumper get

---

[4]Although prior to the enactment of the Vehicle Code, a statute specifically imposed criminal liability for a hit-and-run offense upon one who had control of or the right to exercise control of the automobile (Pen. Code, § 367c, repealed by Stats. 1935, ch. 27, § 802, p. 247), the cases define "driver" to include one who has control of or possesses the right to exercise control of the automobile. (E.g., *People* v. *Odom, supra,* 19 Cal.App.2d 641, 647; see "Revision Note" to Veh. Code, § 20001.)

sideswiped. According to an eyewitness, the car of the injured party crossed the double line, hit a pickup truck head-on, causing on impact a loud noise. The same witness, who was in the car behind defendant's, testified that, even before that major impact, he heard an audible noise when defendant's car collided with the Rink car. At this impact, defendant's car swerved back to the curb lane. The accident occured during daytime. Moreover, defendant's testimony differed only in a few minor points from Hathcock's. The above evidence composes sufficient corroboration of the testimony of the accomplice; it implicates the defendant and relates to a fact which is an element of the crime. (*People v. Lyons, supra,* 50 Cal.2d 245, 257.)

Thirdly and finally, defendant contends that the trial judge did not sufficiently instruct the jury that an essential element of the crime consists of knowledge of injury. The judge instructed the jury that section 20001 of the Vehicle Code requires "the driver of any vehicle knowingly involved in an accident resulting in injury to any person other than himself, or death of any person" to stop and perform the duties enumerated. (CALJIC No. 974, Revised.) The court also instructed the jury that "knowingly" embraces a knowledge of the facts in question (CALJIC No. 76) and that each essential fact of the crime must be proved (CALJIC No. 28, Revised). The court rejected defendant's request for an instruction to the effect that an essential element of the offense consists of the accused's knowledge of the occurrence of a resulting injury to a person.

Defendant argues that the instruction given implies that even if defendant did not know of the injury, he would be guilty in the event that he knew of the accident, left the scene of the accident, and someone suffered injury in that accident.[5] Since the instruction foments the danger of this implication, the judge should upon retrial instruct the jury of the requirement that defendant know that·the accident resulted in injury to a person or know that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person. (See *People* v. *Mayo* (1961) 194 Cal.App.2d 527, 536-537 [15 Cal.Rptr. 366].) Since we reverse on other grounds we do not discuss whether

---

[5] The record indicates that even the trial judge construed the statute in this manner before defendant called to his attention the cases requiring knowledge of injury.

the trial court's instructions on this point caused prejudice to defendant. (See Hughes, *Criminal Omissions* (1958) .67 Yale L.J. 590, 609-612.)

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Peek, J., Burke, J., and White,* J., concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.